**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

AMANDA COTTLE, individually and on behalf
of all others similarly situated,

      Plaintiff,

v.                                          CASE NO.: 3:19-cv-45-J-J-20MCR

PAPA MURPHY'S COMPANY STORES, INC.,
A foreign profit corporation,

      Defendant.

_____/

## JOINT MOTION FOR APPROVAL OF SETTLEMENT

Plaintiff, Amanda Cottle (the "Named Plaintiff"), individually and on behalf of the collective of individuals who previously joined this matter and/or will join this matter for settlement purposes, and PAPA MURPHY'S COMPANY STORES, INC. ("PM" or "Defendant") file this Joint Motion for Approval of Settlement and request that the Court approve the parties' Joint Stipulation and Release (the "Agreement") and dismiss this action with prejudice.

## I.    INTRODUCTION

The settlement memorialized in the parties' Agreement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it was reached after significant information and data exchange and contested litigation, and was the result of many months of arm's length settlement negotiations conducted by experienced counsel well versed in applicable law, and with the assistance of a neutral mediator.  Accordingly, the parties request that the Court:  (1) approve as fair, adequate and reasonable the $1,800,000.00 settlement set

forth in the Agreement (Exhibit 1); (2) approve the proposed Notice of Collective Action Settlement ("Notice Form") attached as Exhibit A to the Agreement and the proposed distribution method; (3) approve Rust Consulting as the Settlement Administrator; (4) dismiss the lawsuit with prejudice; (5) award Plaintiff's attorneys fees and costs per the Agreement; (6) award $8,500.00 total in Service Awards to the Named Plaintiff and Opt-In Plaintiff Jamie Davis; (7) retain jurisdiction to enforce the settlement; and (8) grant any other further relief that this Court deems just and proper.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit was filed on January 8, 2019, by the Named Plaintiff.   Thereafter, 15 additional individuals opted into this case (collectively, "Current Opt-in Plaintiffs").   Plaintiff was employed as an exempt-classified Store Manager ("SM"), at Defendant's corporate-owned locations.   Notwithstanding this "manager" characterization, Plaintiff asserts that she and other similarly situated SMs were misclassified as exempt and were not paid for overtime hours for work in excess of 40 hours per workweek in violation of the FLSA.

In its Answer, Defendant denies Plaintiff's allegations, raises various defenses, and contends that SMs were properly classified as exempt under one or more exemptions to the FLSA's overtime provisions, and properly compensated for all time worked.   Specifically, Defendant asserts that Plaintiff and other SMs were exempt under the administrative and/or executive exemptions.

Both before and during the litigation, the parties and their counsel conducted a thorough investigation into the merits of their respective claims and defenses.   Plaintiff's Counsel conducted interviews, obtained statements, and reviewed extensive written materials including

time records, pay records, job descriptions, training manuals, performance standards and evaluations, disciplinary actions, and correspondence.

On April 1, 2019, the parties, after a preliminary exchange of data and information regarding their respective positions, met in Portland, Oregon to attend a FLSA collective action mediation in an effort to resolve this litigation, globally. The parties did not resolve this case at mediation, but agreed, through the mediator, Eric English, Esq. of Resolution Strategies LLP, who is experienced in complex wage and hour cases, to continue discussions and the exchange of information until such time as the parties and the mediator believed that settlement discussions were no longer viable. Through the efforts of the parties and mediator over the next few months, the parties ultimately agreed to settle this matter on a collective-wide basis based on their mutual acceptance of a mediator's proposal. The parties notified the Court of this acceptance on August 1, 2019.

Thereafter, the parties negotiated the details of the full and final settlement of this litigation, and drafted the Agreement attached hereto as Exhibit 1, a Notice of Collective Action Settlement ("Notice Form") attached as Exhibit A to the Agreement, and a Consent to Join Settlement, Release, and Claim form ("Consent Form") attached as Exhibit B to the Agreement. The parties negotiated the terms of this settlement in good faith and required additional assistance from the mediator to finalize all of the settlement details. The Agreement was fully executed on October 15, 2019.

Pursuant to the parties' Agreement, the Notice/Settlement Form will issue to all SMs who were employed by Defendant as SMs from July 12, 2016, through July 12, 2019, allowing them the opportunity to opt-in to the settlement of this lawsuit, and claim his or her share of the respective common fund created as part of the settlement of this lawsuit ("Collective Members").

The Agreement negotiated and achieved by the parties constitutes a reasonable compromise of all of the disputed issues raised by the SMs in this action.  All parties were counseled and represented by their respective attorneys throughout the settlement process.  The parties now seek Court approval of the Agreement, attached as Exhibit 1.

## III.   SUMMARY OF THE SETTLEMENT TERMS

### A.   The Maximum Settlement Payment and Potential Exposure

The settlement terms are set forth in the Agreement marked as Exhibit 1.  The Maximum Settlement Payment By Defendant Papa Murphy's shall mean the maximum amount that Defendant is obligated to pay.  Defendant's maximum payment responsibility shall be One Million Eight Hundred Thousand Dollars ($1,800,000.00), is subject to the terms of the Agreement, and inclusive of payment for:  (1) all settlement amounts to be paid to the Named Plaintiff, Current Opt-In Plaintiff Jamie Davis, and all Qualified Collective Members; (2) service payments approved by the Court to the Named Plaintiff and Current Opt-In Plaintiff Jamie Davis; (3) attorneys' fees approved by the Court for Collective Counsel; (4) costs approved by the Court for Collective Counsel; (5) settlement administration costs incurred by the Claims Administrator approved by the Court; (6) Qualified Collective Members' share of applicable federal, state, and local taxes required to be withheld by Defendant from payments to Qualified Collective Members; and (7) Defendant's share of payroll taxes for Qualified Collective Members.

This settlement is a great resolution of disputed unpaid overtime claims.  Both sides were confident in their legal positions and, absent resolution, this case was likely headed towards lengthy litigation with a collective action trial (or many individual trials) and appeals.  Plaintiff has made a damage analysis and, based upon that analysis, estimates that the total damages for

the entire three-year period are about $1,835,623.   Based upon Plaintiff's damage analysis, Plaintiff further contends that if Plaintiff obtained a Court order awarding full liquidated damages, Defendant's potential exposure, according to Plaintiff, would be approximately $3,671,245.   Moreover, under Plaintiff's damage calculations if Plaintiff were unsuccessful at showing that Defendant willfully violated the FLSA, Plaintiff's damage calculations would show that actual damages would be reduced to about $1,200,000.   Papa Murphy's raised defenses to Plaintiff's willfulness allegations arguing that Store Managers' in charge of restaurants primary duties are exempt work.   Thus, Plaintiff believes that it could have been challenging to Plaintiff to prove willfulness which could have limited any potential damages to a two-year period. Plaintiff also faced many risks to obtain damages, including having to defeat Defendant's exemption defenses and prevail against Defendant's defense that it acted in good faith and therefore no liquidated damages should be awarded.   Therefore, Plaintiff submits that the Maximum Settlement Payment By Defendant of $1,800,000 is a fair resolution of these disputed claims.

### B.      Notice of Settlement to Collective Members

The Notice of Collective Action Settlement is set forth in Exhibit A to the Agreement (Exhibit 1).   Within fourteen (14) days of the entry of an order granting approval of the settlement ("Order Granting Approval), Defendant will provide a list of each Collective Member's name, last-known mailing address, and eligible work weeks.   A Workweek is defined in the Agreement at Section IV.2(b) to mean each calendar week during the period July 12, 2016 to July 12, 2019 during which the Potential Opt-In Plaintiff was employed by Defendant as an exempt-classified Store Manager and received compensation, but shall exclude any work weeks in which the Store Manager worked less than 24 hours.   Within 14 days of the date the Claims

Administrator receives the information identified in Section II.2(A) of the Agreement, the Claims Administrator shall mail a notice packet to the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs via First Class United States mail, postage prepaid, using each individual's last known address as recorded in Defendant's records.  The notice packet shall be marked "Important Legal Document – Please Forward"  and shall consist of "Notice of Collective Action Settlement" (Exhibit A) and a "Consent to Join Settlement, Release, and Claim Form" (Exhibit B), along with a postage pre-paid return envelope for the Potential Opt-In Plaintiffs to return their Consent to Join Settlement, Release, and Claim Form.  Exhibit 1, § II.2(B).

Collective Members will have 60 days from the mailing of all Notice Forms (the "Claim Deadline") to submit a completed Claim Form.  Exhibit 1 at § I ("Claim Deadline" definition). In the event that the notice packet is returned because it is undeliverable without a forwarding address, the Claims Administrator will perform a skip trace for each such returned notice and, if an updated address is found, the Claims Administrator will send the notice packed to the updated address and the Collective Member will still be required to submit a Consent to Join Settlement, Release, and Claim form by the Claim Deadline.  Within 30 days of the Claim Deadline, the Settlement Administrator will mail the settlement checks to the Collective Members who submitted completed Claim Forms.  Exhibit 1 at § III.4.  These Collective Members will have 90 days to negotiate their settlement checks.  Exhibit 1 at § V.4.

### C.    Collective Member Allocation Formula

Each Collective Member's estimated proportionate share of the Net Settlement Fund will be determined by the Settlement Administrator in accordance with the allocation formula in the Agreement, which is based on the number of Eligible Workweeks each Collective Member

worked.  Exhibit 1 at § IV.2.  In short, each Collective Member will receive the same amount for each Eligible Workweek worked as an exempt SM from July 12, 2016 to July 12, 2019.  The calculation of Eligible Workweeks shall be based on Defendant's business records.

### D.    Releases

By participating in the settlement, Collective Members will waive, release, and forever discharge Defendant of all wage and hour claims that have been brought or could have been brought under the FLSA and any other applicable federal, state, or local law, including, without limitation, claims for unpaid overtime and related claims for interest, liquidated damages, attorneys' fees, costs, and expenses related to those wage and hour claims (collectively, "Released Claims").  Exhibit 1 at § VII.2.

The Named Plaintiff and Opt-in Plaintiff Davis also will execute general releases of all claims against Defendant in exchange for their respective Service Awards (subject to Court approval), in recognition of the assistance they provided in obtaining the overall settlement for the collective, as further discussed at Section IV.D, *infra*.  Exhibit 1 at § VII.1.

### E.    Claims Administration

The parties have retained Rust Consulting to serve as the Settlement Administrator and to handle all aspects of the settlement administration including, among other things, preparing and mailing of the notices, calculating the individual settlement amounts, attending to tax matters, processing the claim forms, issuing the settlement checks, and responding to inquiries from Collective Members.

### F.    Attorneys' Fees and Litigation Costs

Under the terms of the Agreement, subject to Court approval, Plaintiff's Counsel is to receive 30% of the Maximum Settlement Payment by Defendant which represents payment of all

reasonable attorneys' fees.    Exhibit 1 at § IV.4.       Plaintiff's Counsel will also receive

reimbursement of their reasonable costs and expenses as approved by the Court.

The Claims Administrator shall pay the Court-approved Collective Counsel's fees and

costs within ten days upon receipt by the Administrator of Defendant's second payment of

$900,000 of the Maximum Settlement Payment.

## IV.     ARGUMENT

### A.     Standards for FLSA Settlements

The parties to an FLSA action can resolve the dispute and enter into a valid waiver of an

employee's FLSA claims where:   (i) the payment of unpaid wages by the employer to the

employee is supervised by the Secretary of Labor, or (ii) the parties present a proposed

settlement to a district court which approves the fairness of the settlement.  *See Lynn's Food*

*Stores, Inc., v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  In discussing the approval

of FLSA settlements, the Eleventh Circuit has noted:

> Settlements may be permissible in the context of a suit brought by employees
> under the FLSA for back wages because initiation of the action by the employees
> provides some assurance of an adversarial context.  The employees are likely to
> be represented by an attorney who can protect their rights under the statute.  Thus,
> when the parties submit a settlement to the court for approval, the settlement is
> more likely to reflect a reasonable compromise of disputed issues than a mere
> waiver of statutory rights brought by an employer's overreaching.  If a settlement
> in an employee FLSA suit does reflect a reasonable compromise over issues, such
> as FLSA coverage or computation of back wages that are actually in dispute, we
> allow the district court to approve the settlement in order to promote the policy of
> encouraging settlement of litigation.

*Id.* at 1354.

"In deciding whether a settlement is fair and reasonable, the court considers the following

factors: '(1) the existence of fraud or collusion behind the settlement; (2) the complexity,

expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of

discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.'"[1]  *Trentman v. RWL Communs., Inc.*, No. 15 Civ. 89, 2015 U.S. Dist. LEXIS 113966, at *4 (M.D. Fla. Aug. 26, 2015).  An FLSA settlement may be approved as fair even where plaintiffs receive in settlement substantially less than the amount they originally claimed.  *See Rutland v. Visiting Nurse Assoc. of Central Fla., Inc.*, No. 07 Civ. 1130, 2008 U.S. Dist. LEXIS 61776, at *3-4 (M.D. Fla. July 29, 2008).  Discovery – including the production of records – as well as the risks associated with litigation and the viability of certain defenses, all may cause a plaintiff to settle for substantially less than the original amount claimed.  *See id.* (approving FLSA settlement where named plaintiff settled for approximately 6% of the wages she originally claimed); *Edwards v. CFI Sales & Mktg.*, No. 09 Civ. 234, 2011 U.S. Dist. LEXIS 134705, at *13 (M.D. Fla. Nov. 4, 2011) (approving settlement where plaintiffs recover was well below that stated in court interrogatories).  In addition, the dispute over the damages at issue in light of Defendant's affirmative defenses, liquidated damages, and the applicable statute of limitations may cause an FLSA plaintiff to accept substantially less in settlement than originally claimed.  *See Ford v. Property Preservation Experts, Inc.*, No. 11 Civ. 1995, 2012 U.S. Dist. LEXIS 107194, at *6-10 (M.D. Fla. July 31, 2012) (approving FLSA settlement where one opt-in plaintiff settled for less than 3% of his original claimed back wages).  In short, "[t]he Court should be mindful of the strong presumption in favor of finding a settlement is fair."  *Id.* at *3 (internal citations omitted).

---

[1]  With regard to the first of the six factors, there is no fraud or collusion here, and nothing in the record to even remotely suggest any taint to the settlement.  The other five factors are addressed and incorporated herein, *infra*.

**B.     This Settlement Represents a Fair and Reasonable Resolution of a *Bona Fide* Dispute**

The settlement is fair because it is a reasonable compromise of a *bona fide* dispute regarding Collective Members' unpaid wages, reached *via* arms' length negotiation between adversarial parties and counsel, necessitating the aid of an experienced mediator over months of negotiations to reach resolution.  This dispute was a vigorously contested litigation in which Defendant put forth significant evidence of several affirmative defenses, which may have presented barriers to Plaintiff's success on the merits, making continued litigation expensive and lengthy, with no certainty of success on the merits.

First, Defendant argued that the Collective Members' primary duties—that is, the primary duties of the SMs—were managerial in nature and Collective Members were exempt under the executive and/or administrative exemptions.  While Plaintiff argued that SMs' primary duties were not exempt such as cleaning, making pizzas, and performing customer service, Defendant argued that SMs primarily performed exempt duties like hiring, firing, interviewing, and handling personnel matters.  Given these disputes, Plaintiff believes that it was likely that the primary duty issue would need to be resolved by a jury.  Thus, given the competing evidence on the primary duty issue, Plaintiff believes that the Collective Members faced significant risk in their ability to prevail in these claims at trial.

Second, Defendant indicated that, if Plaintiff obtained conditional certification, Plaintiff believed that Defendant intended to seek decertification later because of the alleged differences between the duties and individualized circumstances of each Collective Member.  If Defendant obtained decertification, then the Collective Members would all have to have brought their claims on an individual basis in many courts throughout the country, making recovery of unpaid wages challenging, risky, costly, and very time-consuming.

Through negotiation, the parties reached a compromise that took into consideration all of these factors.

Additionally, as discussed above, the period covered by the settlement is July 12, 2016 through July 12, 2019.   While the claims of many Collective Members would have expired pursuant to the FLSA's two-year statute of limitations, the parties here negotiated a full three-year statute of limitations period to allow a larger number of SMs to benefit from the Agreement and receive a settlement award.

Given these factors, Plaintiff's Counsel believe, based on their experience and professional judgement, that the settlement represents a fair and reasonable compromise of the disputed claims in this litigation.

### C.      The Proposed Notice Form Should Be Approved

The Court should approve the proposed Notice attached as Exhibit A to the Agreement (Ex. 1).  The proposed Notice sufficiently informs each Collective Member of the Agreement's terms, including allocation formula, the estimated amount they will receive in settlement, the scope of the release, and the service awards, attorneys' fees and costs.

### D.      Plaintiff requests That the Court Approve the Service Awards

The Agreement also provides for Service Awards to the Named Plaintiff and Opt-In Plaintiff Davis in recognition of the assistance they provided in obtaining the overall settlement for the Collective Members.  Through the settlement, Named Plaintiff would receive a $6,000 service award and Opt-In Plaintiff Davis would receive a $2,500 service award and both would provide a general release of claims in exchange for receiving these payments.   Plaintiff's Counsel maintains that the Named Plaintiff and Opt-In Plaintiff Davis identified the claims asserted and helped lead this collective action lawsuit by participating in extensive meetings and

conferences with counsel, responding to questions, reviewing, analyzing and interpreting documents, and aiding Plaintiff's Counsel in preparing for mediation and the conditional certification motion. Plaintiff's Counsel asserts that, without their efforts and dedication to the Collective Members, this settlement likely would not have been obtained. Defendant does not oppose the request for a Service Awards.[2] Exhibit 1 at § IV.3.

### E.    The Attorneys' Fees and Costs Are Reasonable and Should Be Approved

For their efforts on behalf of the Collective Members, Plaintiff's Counsel are applying for compensation from the Maximum Settlement Payment by Defendant on the basis of a percentage fee, seeking 30% of the Maximum Settlement Payment by Defendant as attorneys' fees plus costs, which method of compensation was agreed to by the Named Plaintiff via her retainer agreement with Plaintiff's Counsel. Plaintiff submits that the fee sought is a reasonable amount of compensation. The percentage method is the preferred method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interests of the class and most fairly correlates counsel's compensation to the benefit conferred on the class. The percentage method also takes into account the risk of contingency litigation and provides an incentive for attorneys to take cases on a contingency basis for clients who could not otherwise pay for legal services. Defendant does not oppose Plaintiff's Counsel's request for 30% of the

---

[2]     Representation payments to compensate named plaintiffs for their diligence and involvement are routinely approved in FLSA collective actions by federal courts in Florida. *See, e.g., Tam Su v. Electronic Arts, Inc.*, 2006 U.S. Dist. LEXIS 98894, *18 (M.D. Fla. Aug. 29, 2006) (granting $10,000.00 service award in FLSA matter); *see also Devries, et al. v. Morgan Stanley & Co. LLC, et al.*, Case No. 9:12-cv-81223 (granting service awards in amounts as high as $10,000.00 to 35 plaintiffs for their assistance in obtaining settlement for the collective); *Cooper-Gutteman, et al. v. TMS Health, LLC, et al.*, Case No. 9:13-cv-81265-KAM, D.E. 38 (S.D. Fla. July 15, 2015) (granting service awards in amounts as high as $10,000.00 to six plaintiffs for the assistance they provided in obtaining the settlement for the class even though they did not sit for deposition); *Evans v. Comcast Corp., et al.*, Case No. 9:12-cv-81203-KAM, D.E. 157 (S.D. Fla. Oct. 22, 2014) (granting service awards totaling $15,000.00 to five plaintiffs who sat for deposition); *Mosser v. TD Bank, N.A. (In re Checking Account Overdraft Litig.*, MDL No. 2036), 2013 U.S. Dist. LEXIS 187627, at *91 (S.D. Fla. Mar. 18, 2013) (granting incentive awards as high as $10,000.00 to named plaintiffs in Rule 23 class for the actions they took to protect the claimants, the degree to which others benefited, and the amount of time and effort the plaintiffs expended); *Signorelli, et al. v. UtiliQuest*, 2008 U.S. Dist. LEXIS 109357 (M.D. Fla. July 25, 2008) (hybrid FLSA/Rule 23 action); *Shores v. Publix Super Markets, Inc.*, Case No.: 95-1162-CIV-T-25E, D.E. 319, at 90-91 (M.D. Fla. May 23, 1997).

Maximum Settlement Payment by Defendant as fees and Plaintiff's Counsel's request for reimbursement of their litigation costs as approved by the Court.

> 1.    **Plaintiff Asserts That Thirty Percent of the Maximum Settlement Payment by Defendant Is Reasonable in FLSA Common Fund Cases Such as the Instant Matter**

Plaintiff relies upon the following points and authorities in support of her claim for attorneys' fees.

It has long been recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The purpose of this doctrine is to avoid unjust enrichment and to spread litigation costs proportionately among all beneficiaries. *Id.* This common fund doctrine is not only firmly rooted in American case law, *see, e.g.*, *Trustees v. Greenough*, 105 U.S. 527 (1882); *Central R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), but it is also well-established in the Eleventh Circuit. *See Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 775 (11th Cir. Fla. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); s*ee also Vogenberger v. ATC Fitness Cape Coral*, LLC, 2015 U.S. Dist. LEXIS 53960, at *11 (M.D. Fla. Apr. 15, 2015) (approving 33% of fund as a reasonable attorneys' fee in FLSA collective action); *Moultry v. Cemex,* 8:07-cv-453-T-MSS, Dkt. 145 (M.D. Fla., Aug. 20, 2008) (same); *Mansfield v. Castaways Backwater Café, Inc.,* 2008 U.S. Dist. LEXIS 62909 (M.D. Fla. Aug. 18, 2008) (approving 40% contingency fee from settlement amount in FLSA collective action); *Angione, et al. v. PSS World Medical, Inc.,* 3:02-00854 (M.D. Fla. Nov. 5, 2004) (approving 40% of common fund as attorneys' FLSA action); *Kemper v. Rent-A-Center, Inc.,* Case No. 4:00

CV 435-RH, Dkts. 14-15 (N.D. Fla. 2001) (approving one-third of settlement as attorneys' fee in FLSA settlement).

Moreover, courts in common fund cases in the Eleventh Circuit have awarded fees at or above the 30% requested here.  *See, e.g., Camden I Condominium Ass'n*, 946 F.2d 768 at 774-75 ("an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded"); *see also supra Vogenberger* (33%); *Moultry* (33%); *Mansfield* (40%); *Angione* (40%); *Kemper* (one-third).

> a.   **Plaintiff Asserts That a Fee of Thirty Percent of the Maximum Settlement Payment by Defendant Is Patently Reasonable in This Case and Should Be Approved**

In support of Plaintiff's contention, Plaintiff asserts that in collective FLSA actions, "the court has a duty to determine the reasonableness of the proposed attorneys' fees as part of the fairness determination.  However, the FLSA does not require the Court to conduct an in depth analysis . . . unless the unreasonableness of such award is apparent from the face of the documents."  *Hosier v. Mattress Firm, Inc.*, No. 10 Civ. 294, 2012 U.S. Dist. LEXIS 94958, at *16 (M.D. Fla. June 8, 2012).  Here, where Plaintiff's Counsel has put forth substantial effort and expended numerous hours both prior to and throughout the litigation, located and interviewed witnesses, discussed the facts and litigation strategy with Plaintiff, undertook substantial efforts to research and prove the case, briefed the motion for conditional certification, prepared for and attended a full day mediation, negotiated at length the settlement of the claims over the course of many months, drafted the settlement documents and worked towards the approval of the Agreement, continued negotiations with the mediator over outstanding disputes with the final settlement agreement, and will continue to expend attorney hours through the conclusion of this matter including overseeing the settlement notice process and providing legal

advice to Collective Members, Plaintiff maintains that the fee earned is patently reasonable on its face. *Id.* at *17 (finding that the percentage of the fund requested was patently reasonable based solely on the fact that the fee request was uncontested, plaintiffs' counsel was experienced in FLSA actions and expanded numerous hours in the case); *Lytle v. Lowe's Home Ctrs., Inc.*, No. 12 Civ. 1848, 2014 U.S. Dist. LEXIS 160842, at *11 (M.D. Fla. Nov. 17, 2014) (percentage of the fund requested was "reasonable on its face" simply because it was uncontested).

       **b.**    **Plaintiff Asserts That Assuming *Arguendo* That the Fee Is Not "Patently Reasonable," the Requested Fee Is Reasonable Under the Specific Circumstances of This Case**

Assuming *arguendo* that the requested fee is not "reasonable on its face," Plaintiff maintains that the Court should still find the fee reasonable under the circumstances. When determining whether a fee request is reasonable under the circumstances, courts consider:

> (i) the time and labor required;
> (ii) the novelty and difficulty of the questions involved;
> (iii) the experience, reputation, and ability of the attorneys and the skill requisite to perform the legal services properly;
> (iv) time limitations imposed by the client or the circumstances;
> (v) the amount involved and the results obtained;
> (vi) the "undesirability" of the case;
> (vii) whether the fee is fixed or contingent; and
> (viii) the customary fee and awards in similar cases.

*Stahl v. Mastec, Inc.*, No. 05 Civ. 1265, 2008 U.S. Dist. LEXIS 120887, at *4-5 (M.D. Fla. May 20, 2008) (citing *Camden I Condominium Assoc., Inc.*, 946 F.2d at 768).   In light of these considerations, Plaintiff's fee request is reasonable.

       **i.**    **The Time and Labor Required**

Plaintiff's Counsel asserts that they have spent a considerable amount of time on this case and that the total lodestar to date for the work performed is $304,665.00. Plaintiff relies upon the Declaration of Gregg I. Shavitz in Support of Joint Motion for Approval of Settlement ("Shavitz

Decl."), attached as Exhibit 2, at ¶ 49.  This reflects the time actually spent in the exercise of

reasonable judgment by the lawyers and staff involved and is reflected in detailed time records.

Exhibit 2 at ¶¶ 49-51.  The work undertaken represents the work addressed above in connection

with the investigation and filing of the lawsuit, preparing the conditional certification motion,

obtaining evidence for the conditional certification and performing the necessary research,

attending the court hearing, preparing a detailed damages model for mediation, preparing an in-

depth mediation statement, and the work involved in negotiating and effectuating the Agreement.

*Id.* at ¶¶ 15-31 (describing work performed).  Plaintiff contends that in light of the work

performed to date, the requested fee reflects a multiplier of only 1.77.  However, this amount

does *not* reflect the time still to be incurred in overseeing the administration of the claims process

and this settlement, resolving issues with the Settlement Administrator and Defendant's counsel,

and speaking with Collective Members about the administration and the settlement.  *Id.* at ¶ 51.

By the conclusion of this matter, Plaintiff's Counsel estimates that they will have incurred a total

of approximately $15,000 or more, bringing Plaintiff's Counsel's estimated multiplier to as little

as 1.69 or less.[3]  Thus, Plaintiff contends that the fee requested is more than fair given the actual

time already invested.

###                       ii.        The Novelty and Difficulty of the Questions Involved

Plaintiff also asserts that this case involved numerous unresolved and evolving legal

issues which would have been presented throughout litigation.  Had this Agreement not been

reached, Plaintiff's Counsel asserts that these factual and legal questions would have been the

subject of many hours of depositions and trial testimony.  Plaintiff's Counsel has litigated many

---

[3]        "Courts in common fund cases regularly award multiples of 2 to 3 times lodestar in attorney's fees to
reflect the quality of the work performed and the risks undertaken."  *Ressler v. Jacobson*, 149 F.R.D. 651, 653 n.4
(M.D. Fla. 1992) (collecting cases finding multipliers of between 3 and 4.5 to be appropriate); *accord Thorpe v.
Walter Inv. Mgmt. Corp.*, No. 1:14-cv-20880-UU, 2016 U.S. Dist. LEXIS 144133, at *35 (S.D. Fla. Oct. 14, 2016)
(finding 3.58 multiplier to be reasonable and awarding one-third of the settlement as attorneys' fees).

Store Manager misclassification cases which present additional challenges for Plaintiff than the lower-level manager cases because the Store Managers are the highest ranking title in the store. Decertification was also a risk to the extent Papa Murphy's was able to demonstrate material differences across the Store Managers who worked in different states and under different managers. Additionally, numerous issues would be raised in Plaintiff's attempt to prove Defendant liable with respect to this "management" position. Given the inherent complexities of this wage and hour collective action, Plaintiff's Counsel asserts that the fee requested is more than fair.

### iii. The Experience, Reputation, and Ability of the Attorneys, and the Skill Requisite to Perform the Legal Services Properly

Plaintiff's Counsel maintains that the quality and efficiency of Plaintiff's Counsel's work on this case was superior and is reflected in the result. Plaintiff's Counsel has specific expertise and knowledge with respect to aspects of the litigation, including extensive and successful records in collective action and wage and hour litigation. Shavitz Decl. at ¶¶ 3-13. Plaintiff's Counsel submits that they put together a persuasive case in the face of the Defendant's strong defenses, evidence, and arguments to the contrary. The settlement is in part a direct result of effective lawyering and the acumen and diligence of Plaintiff's Counsel.

### iv. Time Limitations Imposed By the Client or the Circumstances

Plaintiff's counsel also contends that in part through Plaintiff's Counsel's efforts, the parties agreed to expedited negotiations to maximize the limitations period for Collective Members who otherwise would have been subject to a continually running statute of limitations. This factor favors the fee request.

### v.      The Amount Involved and the Result Obtained

Plaintiff relies upon the following points and authorities.  Many courts recognize that the result achieved is a major factor to be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd,* 899 F.2d 21 (11th Cir. 1990).  Plaintiff asserts that it was only through the pressures of litigation that such a result was able to be negotiated for the Collective Members.  The case involved many complex issues, including whether it would have been conditionally certified, whether the case would have been decertified, whether Defendant's exemption defense barred Plaintiff's claims, and whether Defendant acted in good faith.  Moreover, the settlement provides consideration for the full three years of the statute of limitations, even in light of the strength of such defenses.

It should also be noted that the release required from Collective Members to participate in the settlement is not a general release.[4]  Rather, the Qualified Collective Members who sign Consent Forms and agree to be bound by the Agreement shall Release Defendant and the Releasees on behalf of themselves and for their attorneys, heirs, executors, personal representatives, administrators, successors and assigns of all wage and hour claims that have been brought or could have been brought under the FLSA and any other applicable federal, state, or local law, including, without limitation, claims for unpaid overtime and related claims for interest, liquidated damages, attorneys' fees, costs, and expenses related to those wage and hour claims.

---

[4]      The Named Plaintiff and Opt-In Plaintiff Davis will provide a general releases in exchange for their Service Awards, and "courts within this district have approved general releases in FLSA cases when the plaintiff receives compensation that is separate and apart from the benefits to which plaintiff is entitled under the FLSA." *Pfeuti v. Naples Transportation & Tours, LLC*, No. 16 Civ. 364, 2016 U.S. Dist. LEXIS 158558, at *7 (M.D. Fla. Nov. 16, 2016).

### vi.      The "Undesirability" of the Case

From the outset, Plaintiff's Counsel asserts that they faced many risks in pursuing this litigation on behalf of the Store Manager position to successful conclusion. Had this settlement not been achieved, Plaintiff faced additional litigation expenses, including discovery, motion practice, depositions, possible expert discovery, a jury trial, and possible post-trial appeals, with ultimate success far from certain.   At the time of settlement, the risks and uncertainties of continued litigation made it far from certain that an ultimate recovery would be obtained. Plaintiff's Counsel represent that they received no compensation during the course of this litigation and that any fee award to Plaintiff's Counsel has been at risk and contingent on the result achieved.   Plaintiff's attorneys submit that these circumstances underscore the apparent "undesirability" of this case and supporting the requested fee.

### vii.      Whether the Fee Is Fixed or Contingent

Plaintiff's Counsel contends that a determination of a fair fee should include consideration of the contingent nature of the fee and the difficulties overcome in obtaining a settlement.  As one court held:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See Richard Posner, Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994).

Plaintiff's Counsel states that they represented Plaintiff and the Collective Members on a total contingency basis and received no compensation during the course of this litigation while simultaneously spending a substantial amount of time to obtain this result.  Plaintiff's Counsel

assert that their willingness to litigate this case entirely on a contingency basis and bear all the financial risks of litigation supports the requested fee.

### viii.    The Customary Fee and Awards In Similar Cases

Finally, Plaintiff's attorneys assert the fee requested here is in line with those awarded by District Courts in this Circuit.  *See, e.g.*, *supra Vogenberger*; *Moultry*; *Mansfield*; *Angione*; *Kemper*.  Plaintiff argues that this Court should follow the established precedent of the Eleventh Circuit, find Plaintiff's fee request reasonable in light of the circumstances, and grant same.

### 2.    Plaintiff's Counsel Asks that Its Costs Be Awarded by the Court Because They Are the Reasonable and Actual Costs of the Litigation

Plaintiff's Counsel requests reimbursement of its litigation costs. Plaintiff asserts that the cost request is reasonable in light of the scope of this litigation and represents *actual* costs and expenses incurred by Plaintiff's Counsel, including court fees, travel costs, and mediation fees and costs.  Plaintiff relies upon the Shavitz Declaration (Exhibit 2 at ¶ 52).

### F.    Defendant Does Not Oppose Plaintiff's Request for Attorneys' Fees and Costs

For settlement purposes only, and without adopting or agreeing to Plaintiff's Counsel's points and authorities, Defendant states that it does not oppose Plaintiff's request for attorneys' fees and costs.  Defendant's lack of opposition to Plaintiff's request for attorneys' fees and costs are without prejudice to asserting a contrary position in any other action or in this action should the Court deny the instant motion and litigation continues.

### G.    Plaintiff's Attorneys Contend That An Objection Process Is Not Warranted and that a Fairness Hearing is Not Required

Plaintiff's Counsel relies upon the following points and authorities in support of their position that a fairness hearing is not required.  Courts may approve settlements of FLSA opt-in collective actions—which are starkly different from Fed. R. Civ. P. 23 opt-out class actions—

without the need for a "fairness hearing," or "objection period." *Campbell v. Pincher's Beach Bar Grill Inc.*, No. 15 Civ. 695, 2017 U.S. Dist. LEXIS 136497, at *5-6 (M.D. Fla. Aug. 24, 2017) ("The Court finds persuasive the authorities cited by the parties in which jurists on this Court approved a settlement at the conditional certification stage without requiring a final certification prior to approving a settlement); *see also Czopek v. Tbc Retail Grp., Inc.*, No. 14 Civ. 675, 2016 WL 7116112, at *2 (M.D. Fla. Nov. 7, 2016), *report and recommendation adopted*, No. 14 Civ. 675, 2016 WL 7104187 (M.D. Fla. Dec. 6, 2016) (approving collective settlement without "decertification analysis" even with a portion of the settlement allocated to "non-qualifying plaintiffs."); *Trentman*, 2015 U.S. Dist. LEXIS 113966, at *6 (granting approval of settlement on behalf of conditionally certified collective); *Edwards*, 2011 U.S. Dist. LEXIS 134705, at *9 (same); *Reina-Mujica v. Avatar Props.*, No. 08 Civ. 2000, 2009 U.S. Dist. LEXIS 135584, at *5-6 (M.D. Fla. Aug. 31, 2009) (same).[5]  The Eleventh Circuit has explained that "it is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure."  *Morgan*, 551 F.3d at 1259 n. 36 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n. 12) (11th Cir. 1996).  Specifically, in an "FLSA action, unlike in a Rule 23 class action, a named plaintiff can represent others only when they affirmatively opt-in to the case."  *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 708 (11th Cir. 2014).  For this reason, the due process

---

[5]     While this Circuit recognizes a two-tiered process for FLSA collective actions, it is well established that "[t]he second stage is [only] triggered by an employer's motion for decertification." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008).  Notwithstanding that a decertification/final certification decision is unnecessary for settlement approval purposes, here, Defendant, *for settlement purposes in this specific case only*, stipulates to final certification and does not oppose Plaintiffs' assertion that all Collective Members were "similarly situated" as they were employed by Defendant as exempt classified SMs and all allege they were misclassified as such, were subject to the same job expectations as reflected in Defendant's job description, all allege to have worked unpaid overtime hours each week with Defendant's knowledge and direction, and faced common defenses asserted by Defendant, including the applicability of the executive and administrative exemptions, the "lack of willfulness defense," and the "good faith" defense, among others.  *See Goldsby v. Renosol Seating, LLC*, 294 F.R.D. 649, 656 (S.D. Ala. 2015).  Defendant's position here is without prejudice to asserting the contrary position in any other actions, or in this action should the Court deny the instant Motion and litigation continue.

considerations which are analyzed in the approval of a settlement of a Rule 23 opt-out class action are inapplicable to the approval of the settlement an FLSA opt-in collective action. *Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983) ("the due process concerns [in Rule 23 opt-out class actions] . . . have no counterpart in a section 16(c) class action."); *see also Dolan v. Project Constr. Corp.*, 725 F.2d 1263, 1266 (11th Cir. 1984) (same).

There is no need for an objection process here as Collective Members are provided a 60-day window to consider the settlement terms and will not be bound by the settlement and release of claims unless they voluntarily choose to participate.

## V. CONCLUSION

The parties respectfully request the Court approve the settlement as a fair and reasonable compromise of these contested FLSA claims.

**WHEREFORE**, the parties respectfully request this Court enter an Order (1) approving as fair, adequate and reasonable the maximum $1,800,000.00 settlement payment set forth in the Agreement (Exhibit 1) and ordering the parties to comply with the Agreement's terms; (2) approving the proposed Notice Form attached to the Agreement (Exhibit A to Agreement), (3) approving the proposed form of Consent to Join Settlement, Release, and Claim Form (Exhibit B to Agreement); (4) appointing Rust Consulting as the Settlement Administrator; (5) dismissing the lawsuit with prejudice; (6) awarding Plaintiff's attorneys' fees and Plaintiff's costs as approved by the Court; (7) awarding a Service Award of $6,000.00 to the Named Plaintiff and $2,500.00 to Opt-In Plaintiff Davis; (8) retaining jurisdiction to enforce the settlement; and (9) granting any other further relief that this Court deems just and proper.

Dated:   October 15, 2019                          Respectfully submitted,

By: s/Gregg I. Shavitz_____          By:_____s/Samuel Horovitz_____

E-mail: gshavitz@shavitzlaw.com
Logan A. Pardell
E-mail: lpardell@shavitzlaw.com
Tamra Givens
E-mail:  tgivens@shavitzlaw.com
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
Facsimile:  (561) 447-8831

Richard Celler
Email: Richard@floridaovertimelawyer.com
**CELLER LEGAL, P.A.**
7450 Griffin Road, Suite 230
Davie, Florida 33314
Telephone:  (954) 903-7475

*Attorneys for Plaintiffs*

Samuel Horovitz
**ROGERS TOWERS, P.A.**
Fla. Bar No. 059015
1301 Riverplace Boulevard, Ste. 1500
(904) 398-3911 (telephone)
(904) 396-0663 (facsimile)
shorovitz@rtlaw.com ( email)

**BARRAN LIEBMAN LLP**
Paula A. Barran
OSB No. 803974
Richard C. Hunt
OSB No. 680770
Edwin A. Hamden
OSB No. 721129
601 SW 2nd Avenue, Suite 2300
Portland, Oregon 97204
(503) 228-0500 (telephone)
(503) 274-1212 (facsimile)
ehamden@barran.com ( email)
pbarran@barran.com ( email)
rhunt@barran.com ( email)

*Attorneys For Defendant*