# EXHIBIT 1

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release ("Agreement") is made between Plaintiff Amanda Cottle ("Named Plaintiff"), on behalf of herself and each of the other "Qualified Collective Members" as defined in this Agreement, on the one hand, and Papa Murphy's Company Stores, Inc. ("Defendant") on the other hand.  The Named Plaintiff, the Qualified Collective Members, and Defendant are herein referred to collectively as the "Parties" or the "Settling Parties."

**RECITALS**

1.      Named Plaintiff filed a collective action on January 8, 2019, captioned Amanda Cottle, individually on behalf of all others similarly situated, Plaintiff, vs. Papa Murphy's Company Stores, Inc., a foreign Corporation, Defendant, Case No. 3:19-CV-00045-HES-MCR ("Complaint" or "Litigation").   The Complaint asserted a collective action claim against Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 209, et seq, based on an alleged misclassification of company store managers at Defendant's stores who are or were formerly employed by Defendant;

2.      The purpose of this Agreement is to settle fully and finally all Released Claims (as hereinafter defined) between the Parties, including all claims asserted in this Litigation;

3.      Defendant denies all of the allegations made in this litigation and denies that it or the Releasees (hereinafter defined) are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation.  Nonetheless, without admitting or conceding any liability or damages whatsoever, and without prejudice to any position already taken in the Litigation or any future proceedings, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

4.      The Parties participated in extensive settlement negotiations.  These negotiations eventually reached an accord resulting in this Agreement; and

00840978.DOCX

5.      The Settling Parties agree to settle and resolve any and all claims that were or could be asserted by the Qualified Collective Members in the Litigation pursuant to the terms of this Agreement, in order to avoid the burden, expense, risks, and uncertainties of litigation.

**NOW THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for in this Agreement, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions.

## I.      DEFINITIONS

The defined terms set forth herein have the meanings ascribed to them below.

**Agreement.** "Agreement" shall mean this Joint Stipulation of Settlement and Release.

**Claims Administrator.** "Claims Administrator" shall mean Rust Consulting, Inc., the neutral entity jointly selected by the Parties to provide Notice to the Collective, administer payment of the settlement to members of the FLSA Collective, and to complete other tasks described in the settlement.

**Claim Deadline.** "Claim Deadline" shall mean the latest date by which a Consent to Join Settlement, Release, and Claim Form must be received by the claims Administrator in order for a Collective member to participate in the settlement and receive a proportionate share of the settlement. The Claim Deadline date shall be 60 days following the date the Notice of Collection Action Settlement is mailed. All notices shall be mailed by the Claims Administrator on the same date.

**Consent to Join Settlement, Release, and Claim Form.** "Consent to Join Settlement, Release, and Claim Form" shall mean the form appended hereto as Exhibit B to be submitted by Collective members who wish to participate in the collective claims settlement and thereby receive a proportionate share of the settlement.

**Collective.** "Collective" shall mean members of the proposed FLSA collective class, which is comprised of all current and former Store Managers employed at Defendant's company-owned stores from July 12, 2016 to July 12, 2019.

**Collective Counsel.** "Collective Counsel" shall mean Gregg I. Shavitz of Shavitz Law Group, P.A. and Richard Celler of Celler Legal, P.A. For purposes of providing any Notices required under the Agreement, such Notices shall be sent to Gregg I. Shavitz of Shavitz Law Group, P.A. and Richard Cellar of Celler Legal, P.A.

**Court.** "Court" shall mean the United States District Court for the Middle District of Florida, the Honorable Harvey E. Schlesinger presiding.

**Current Opt-In Plaintiffs.** "Current Opt-In Plaintiffs" shall mean Collective members who, prior to Notice of Collective Action Settlement, consented to join as a party plaintiff in the Litigation and who have signed a Consent to Join Settlement, Release, and Claim Form.

**Defendant.** "Defendant" shall mean Papa Murphy's Company Stores, Inc.

**Defendant's Counsel.** "Defendant's Counsel" shall mean Barran Liebman LLP and Rogers Towers, P.A. For purposes of providing any Notices required under the Agreement, such Notices shall be sent to Paula A. Barran and Richard C. Hunt of Barran Liebman LLP and to Samuel J. Horovitz of Rogers Towers, P.A.

**Effective Date.** The "Effective Date" is the date on which the Agreement becomes effective which shall mean the later of : (1) the full execution of this Agreement; and (2) 60 days following the Court's Order Granting Approval of the Agreement and settlement.

**Maximum Settlement Payment By Defendant.** "Maximum Settlement Payment By Defendant" shall mean the maximum amount that Defendant is obligated to pay. Defendant's maximum payment responsibility shall be One Million Eight Hundred Thousand Dollars ($1,800,000.00). The Maximum Settlement Payment By Defendant is subject to the terms of this Agreement and inclusive of payment for: (1) all settlement amounts to be paid to the Named Plaintiff, Current Opt-In Plaintiffs, and all Qualified Collective Members, and/or their respective authorized legal representatives; (2) the Service Payments approved by the Court for the Named Plaintiff and Current Opt-In Plaintiff Jamie Davis; (3) all Attorneys' Fees approved by the Court for Collective Counsel; (4) Costs approved by the Court for Collective Counsel; (5) all Settlement Administration Costs incurred by the Claims Administrator, including all costs in

connection with the Settlement Fund (as defined below); (6) the Qualified Collective Members' share of applicable federal, state, and local taxes required to be withheld by Defendant from payments to Qualified Collective Members; and (7) Defendant's share of payroll taxes for the Qualified Collective Members. The Maximum Settlement Payment By Defendant shall be the maximum that Defendant or Released Parties shall pay to settle the Litigation and obtain releases from the Qualified Collective Members. The Maximum Settlement Payment By Defendant is exclusive of any and all interest or investment income accrued, which accrued interest/income shall revert to Defendant. All undistributed, unclaimed and/or unpaid amounts as described in this Agreement shall revert back to Defendant after completion of the settlement process.

**Named Plaintiff.** "Named Plaintiff," as referenced herein means Amanda Cottle.

**Net Settlement Fund.** "Net Settlement Fund" shall mean the remainder of the Maximum Settlement Payment By Defendant after deductions for Court-approved attorneys' fees and costs, the Court-approved Service Payments to the Named Plaintiff and Current Opt-In Plaintiff Jamie Davis, all settlement administration costs incurred by the Claims Administrator approved by the Court, the Qualified Collective Members' share of applicable federal, state, and local taxes required to be withheld by Defendant from payments to Qualified Collective Members, and Defendant's share of payroll taxes for the Qualified Collective Members.

**Notice of Collective Action Settlement.** "Notice of Collective Action Settlement" shall mean the Court-Authorized Notice of Collective Action Settlement attached hereto as Exhibit A.

**Order Granting Approval.** "Order Granting Approval" shall mean the Order entered by the Court approving the terms and conditions of this Agreement (including the Exhibits A and B hereto) and dismissing the Litigation with prejudice.

**Parties.** "Parties" shall mean Named Plaintiff and Defendant. Parties are also referred to as the Settling Parties.

**Potential Opt-In Plaintiffs.** "Potential Opt-In Plaintiffs" shall mean Collective members who have the potential to become Qualified Collective Members by signing the Consent to Join Settlement, Release, and Claim Form.

**Qualified Collective Members.** "Qualified Collective Members" shall mean the Named Plaintiff, Current Opt-In Plaintiffs, and those Potential Opt-In Plaintiffs who sign the Consent to Join Settlement, Release, and Claim Form and become bound by the settlement and this Agreement.

**Released Claims.** "Released Claims" shall mean any and all claims and potential claims released by Named Plaintiff and the Qualified Collective Members, and further defined in Section VII.

**Releasees.** "Releasees" shall mean Defendant, its and/or their respective affiliates and related entities, and all of its and/or their incumbent and former officers, directors, owners, shareholders, investors, insurers, agents, attorneys, employees, fiduciaries, successors, assigns, and representatives, in their individual and/or representative capacities.

**Service Payments.** "Service Payments" shall mean payments to the Named Plaintiff and Current Opt-In Plaintiff Jamie Davis.

## II.   APPROVAL PROCESS AND COLLECTIVE NOTICE

### 1.   Approval by the Court.

On or before October 10, 2019, the Parties will submit to the Court a Joint Motion for Approval of this Agreement. In connection with the Joint Approval Motion, the Parties will submit to the Court, among other things: (a) Notice of Collective Action Settlement which is appended hereto as Exhibit A; and (b) Consent to Join Settlement, Release, and Claim Form which is appended hereto as Exhibit B. The Joint Motion will further request that the Court dismiss the Litigation in its entirety with prejudice.

### 2.   Collective Notice.

(A)   No later than 14 days after the date of the Order Granting Approval, Defendant will provide the Claims Administrator and Plaintiff's Counsel with a list, in electronic form, of the (1) names, (2) last known mailing addresses, and (3) dates of employment of each member of the Collective. The Claims Administrator will

not use this information for any purpose other than for effectuating Notice and the
terms of the Agreement.

(B)     Within 14 days of the date the Claims Administrator receives the information
identified in Section 2(A) above, the Claims Administrator shall mail a notice
packet to the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In
Plaintiffs via First Class United States mail, postage prepaid, using each
individual's last known address as recorded in Defendant's records. The notice
packet shall be marked as "Important Legal Document – Please Forward" and
shall consist of "Notice of Collective Action Settlement" (Exhibit A) and a
"Consent to Join Settlement, Release, and Claim Form" (Exhibit B), along with a
postage pre-paid return envelope for the Potential Opt-In Plaintiffs to return their
Consent to Join Settlement, Release, and Claim Form. The Named Plaintiff and
Opt-In Plaintiff and service award recipient Jamie Davis will not have to submit a
Consent to Join Settlement, Release, and Claim Form to receive their respective
shares of the settlement.

(C)     In the event that the notice packet is returned because it is undeliverable without a
forwarding address, the Claims Administrator will perform a skip trace for each
such returned notice and, if an updated address is found, the Claims Administrator
will send the notice packet to the updated address and the Collective Member will
still be required to submit a Consent to Join Settlement, Release, and Claim form
by the Claim Deadline.

**3.      Timing of Payment by Defendant of Maximum Settlement Payment of
$1,800,000.**

Defendant is to pay $900,000 of the Maximum Settlement Payment on or before
December 15, 2019, unless the Court orders payment of the first payment at a later date. The

remaining $900,000 of the Maximum Settlement Payment is to be paid to the Claims Administrator 30 days after the first payment date.

4.    **Effect of Failure to Grant Approval.**

If the Court denies entry of an Order Granting Approval, in part or in full, then the Parties jointly agree to renegotiate the settlement to correct the terms in question as provided in the mediated settlement. Should such renegotiations be successful, the Parties agree to jointly seek reconsideration of the ruling denying entry of Judgment, or seek Court approval of the renegotiated settlement. In the event any reconsideration or approval of a renegotiated settlement is denied or that renegotiations are unsuccessful, then the litigation which commenced on January 8, 2019 will proceed and Plaintiff shall have the right to pursue the litigation as if the proceedings had not been stayed, and Defendant shall have the right to defend the litigation as if the proceedings had not been stayed. In the event the Court denies approval, this Agreement shall not be admissible as evidence or used for any purpose in the Litigation or otherwise.

## III.    SETTLEMENT CLAIMS ADMINISTRATION

1.    **Claims Administrator.**    Rust Consulting, Inc. shall serve as Claims Administrator.

2.    **Claims Administrator Responsibilities.**    The Claims Administrator shall be responsible for: (a) determining and finalizing the calculations of the Individual Settlement Payments (as defined below) for the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs who have signed the Consent to Join Settlement, Release, and Claim Form; (b) preparing, printing and disseminating to the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs the Notice Packet and return envelope in a final form and format approved by Counsel for Papa Murphy's and Plaintiffs; (c) copying counsel for all Settling Parties on material correspondence; (d) receiving and reviewing the Consent to Join Settlement, Release, and Claim Form submitted by Potential Opt-In Plaintiffs to determine eligibility for payment and providing all copies of such documents to Counsel for Plaintiffs and Defendant; (e) determining the final Settlement Payment for each Qualified Collective Member in accordance

with this Agreement; (f) mailing the settlement checks to the Qualified Collective Members; (g) mailing or wiring the Service Payments and Collective Counsel's attorneys' fees and costs in accordance with this Agreement and Order of the Court; (h) remitting all payroll tax obligations of Defendant in accordance with this Agreement; (i) issuing W-2 and 1099 Forms for all amounts paid to the Qualified Collective Members; (j) advising Defendant of the employer's share of payroll taxes; and (k) maintaining adequate records of its activities, including the date of the mailing of the Notice Packets and receipt of Consent to Join Settlement, Release, and Claim Form.

> 3. **Tax Withholding and Reporting.**

Employment Taxes: The Settling Parties recognize that the back pay awards to Qualified Collective Members will be subject to applicable tax withholding and reporting and employer payroll taxes. The Claims Administrator shall be responsible for withholding and timely remitting and reporting to the appropriate taxing authorities on behalf of Defendant the employee's share of all state and federal payroll taxes or contributions imposed by applicable law on Defendant (i.e. the employee's share of all FICA, FUTA, SUTA, Medicare, and/or state taxes, collectively referred to herein as the "Employee's Share of Payroll Taxes") for the back wage payment of each Qualified Collective Members. Qualified Collective Members shall be responsible for reporting and otherwise paying taxes for all payments under this Agreement, including payments not allocated as back wages. Defendant must pay payroll taxes for those individuals who make claims, but this amount shall come out of the Maximum Settlement Payment of $1,800,000.00.

> 4. **Payments by Claims Administrator.** The Claims Administrator will begin

making payments once it has made its final calculation of the amount payable to Qualified Collective Members and such payment shall issue no later than 30 days following the Claim Deadline. Court-approved service awards will be paid by the Claims Administrator within 10 days upon receipt of Defendant's first payment of $900,000.00 of the Maximum Settlement Payment to the common fund. The Claims Administrator shall pay the Court-approved

Collective Counsel's fees and costs and the Claims Administrator's fees within 10 days upon receipt of Defendant's second payment of $900,000.00 of the Maximum Settlement Payment.

      5.      **Indemnification.** The Claims Administrator shall indemnify the Settling Parties for any penalty or interest arising out of an incorrect calculation or late deposit of the Administrator.

      6.      **Communication between Counsel and Administrator.** Counsel for the Parties are authorized to communicate directly with the Claims Administrator to expedite the settlement administration process.

## IV.   ALLOCATION OF THE SETTLEMENT FUND

      1.      **Maximum Settlement Payment By Defendant.** In consideration for the dismissal with prejudice of the Litigation as well as the release of claims by the Qualified Collective Members, as well as other good and valuable consideration, the maximum amount that Defendant is obligated to pay shall be One Million Eight Hundred Thousand Dollars ($1,800,000.00) to settle the Litigation. The Maximum Settlement Payment By Defendant is inclusive of payments as defined in detail above.

      2.      **Allocation of Net Settlement Fund.** The Claims Administrator shall calculate the estimated individual settlement payment amounts for the Named Plaintiff, Current Opt-In Plaintiffs, and the Potential Opt-In Plaintiffs who have signed or may sign the Consent to Join Settlement, Release, and Claim Form; and also calculate the actual payment amounts for Qualified Collective Members, pursuant to the following allocation formula:

      (a)      Each member of the "Collective" as defined above shall be assigned one point for each Workweek (as defined below) served as an exempt-classified Store Manager any time during the period July 12, 2016 to July 12, 2019.

      (b)      The calculation of all Workweeks shall be based on Defendant's business records. A "Workweek" shall mean each calendar week during the period July 12, 2016 to July 12, 2019 during which the Potential Opt-In Plaintiff was employed by Defendant as an exempt-classified Store Manager and received compensation, but

shall exclude any work weeks in which the Store Manager worked less than 24
hours.

(c)     To calculate each individual in the Collective's estimated potential proportionate
share and then each Qualified Collective Member's proportionate share:

(i)     Add all points for the members of the Collective to obtain the "Total
Denominator;"

(ii)    Divide the number of points for each individual in the Collective by the
Denominator to obtain each individual's "Percentage of the Net
Settlement Fund."

(iii)   Multiply each individual's assigned percentage by the Net Settlement
Fund amount to determine each individual's estimated individual
settlement amount (the "Individual Share"). The estimated Individual
Share amount shall be included in the Notice of Collective Action
Settlement, along with a summary of the calculation method.

(iv)    With respect to the final settlement calculations of payments to Qualified
Collective Members, the same formula shall be applied to calculate those
payments to Qualified Collective Members (the Individual Settlement
Payments).

(d)     All unclaimed amounts shall revert to and remain the property of Defendant.

3.      **Service Payments.**  From the Maximum Settlement Payment By Defendant,
Collective Counsel shall seek Service Payments of $6,000.00 to the Named Plaintiff and
$2,500.00 to Current Opt-In Plaintiff Jamie Davis as payment for their involvement in
commencing and discovering the claims represented in this Litigation and their involvement in
preparing for mediation for the benefit of all Potential Opt-In Plaintiffs. Defendant will not
oppose such motion. The Claims Administrator will not withhold taxes from the Service
Payments, but will report the Service Payments on IRS Form 1099s. Any amount of the
requested Service Payments not approved by the Court shall revert to Defendant.

4.    **Attorneys' Fees and Costs Amounts.**  Collective Counsel shall make an application to the Court for an award of attorneys' fees in the amount of thirty percent (30%) of the Maximum Settlement Payment By Defendant, which shall equal the amount of $540,000.00 (the "Attorneys' Fees").    In addition, Collective Counsel shall make an application for reimbursement of their reasonable costs which shall be subject to review and approval by the Court.  Defendant will not oppose Collective Counsel's motion for attorneys' fees and costs, provided this Agreement is approved.  Payment of the attorneys' fees and costs to Collective Counsel in the amounts approved by the Court shall constitute full satisfaction of any and all claims against Defendant or obligations by Defendant to pay any person, attorney, or law firm for attorneys' fees, expenses, or costs incurred on behalf of the Named Plaintiff, any Current Opt-In Plaintiffs, and any Qualified Collective Members.  The Claims Administrator shall report the payment of these fees, expenses and costs to Collective Counsel on an IRS Form 1099.  Any amount of the attorneys' fees and costs not approved by the Court shall revert to Defendant.

5.    **Fees, Expenses, and Costs of Claims Administrator.**  All fees, expenses, and costs of the Claims Administrator related directly to its duties under this Agreement (hereinafter collectively referred to as the "Settlement Administration Costs") shall be paid after court approval.  Any amount of expenses and costs of the Claims Administrator not approved by the Court shall revert to Defendant.

## V.    PAYMENTS TO QUALIFIED COLLECTIVE MEMBERS

1.    **Transmittal of Payments to Qualified Collective Members.**  Within fourteen days of the Claim Deadline as defined above, the Claims Administrator will transmit the individual settlement payments to the Qualified Collective Members by first class mail to the last-known address of each Qualified Collective Member, or such other address timely provided by the Qualified Collective Member to the Claims Administrator.

2.    **Taxes on the Individual Settlement Payments.**  The Individual Settlement Payments attributed to the Qualified Collective Members shall be allocated 50 percent to alleged back wages and 50 percent to alleged liquidated damages and interest.  The back wages shall be

subject to all required employee-paid payroll taxes (federal income taxes, state income taxes, employee's share of FICA and FUTA taxes, and other state or local-specific statutory deductions) and other authorized or required deductions (garnishments, tax liens, child support, etc.). The liquidated damages and interest and any Service Payments shall be treated as non-wage income to the Qualified Collective Member. The Claims Administrator shall report the back wage payments to the Internal Revenue Service ("IRS") on IRS Form W-2 and shall report the liquidated damages, interest and Service Payments on IRS Form 1099.

        **3.**      **Tax Advice.** Defendant, Defendant's Counsel, and Collective Counsel have not provided any advice as to the taxability of the payments made pursuant to this Agreement. Recipients of payments, including Qualified Collective Members, are responsible for arranging and paying for advice regarding their tax obligations, and complying with same.

        **4.**      **Negotiation of Settlement Checks.** Qualified Collective Members will have 90 days after the date on the settlement checks (the "Check Issuance Date") in which to negotiate the checks. If any Qualified Collective Member does not negotiate his or her settlement check(s) within 90 days after the Check Issuance Date, any such check will be void and the gross amount of the corresponding Individual Settlement Payment shall revert to Defendant.

## VI.    PAYMENTS BACK TO DEFENDANT

        The Settling Parties agree that any funds remaining after payment to: (1) all Qualified Collective Members who timely negotiate their settlement checks; (2) Collective Counsel for their attorneys' fees and costs approved by the Court; (3) the Claims Administrator for Settlement Administration Costs incurred by the Claims Administrator and approved by the Court; (4) the Court-approved Service Payments; and (5) all applicable taxing agencies for all applicable federal, state and local income taxes, and all federal and state unemployment taxes required to be withheld and/or paid by Defendant, shall revert to Defendant. Within five business days after the time described in V.4 above the Claims Administrator shall pay the full reversion to Defendant by bank transfer or other means acceptable to Defendant with no further charge or claim and without requiring a demand by Defendant.

## VII.  RELEASES

1.  **Releases by Named Plaintiff and Current Opt-In Plaintiff Jamie Davis.**  In consideration of the mutual covenants and promises set forth in this Agreement, as well as good and valuable consideration provided for herein, including payment of service awards, the Named Plaintiff and Current Opt-In Plaintiff Jamie Davis agree to sign releases in the form set forth in Exhibits C and D attached hereto.

2.  **Releases by Qualified Collective Members.**

The Qualified Collective Members who sign Consent Forms and agree to be bound by the Agreement shall Release Defendant and the Releasees on behalf of themselves and for their attorneys, heirs, executors, personal representatives, administrators, successors and assigns of all wage and hour claims that have been brought or could have been brought under the FLSA and any other applicable federal, state, or local law, including, without limitation, claims for unpaid overtime and related claims for interest, liquidated damages, attorneys' fees, costs, and expenses related to those wage and hour claims.

## VIII.  NOTICES

All notices, requests, demands and other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be delivered personally or mailed, postage prepaid, by first-class mail to the undersigned persons at their respective addresses as set forth herein:

Counsel for Plaintiffs:

> Gregg I. Shavitz, Esq.
> Shavitz Law Group, P.A.
> 951 Yamato Road. Suite 285
> Boca Raton, FL 33431
> Tel: (561) 447-8888
> Fax: (561) 447-8831
>
> Richard Celler, Esq.
> Celler Legal
> 10368 W. SR. 84, #103
> Davie, Florida 33324
> Tel:  (866) 344-9243
> Fax:  (954) 337-2771

Counsel for Papa Murphy's:     Paula Barran, Esq.
                               Richard Hunt, Esq.
                               Barran Liebman LLP
                               601 SW 2nd Avenue, Suite 2300
                               Portland, OR 97204
                               Tel: (503) 228-0500
                               Fax: (503) 274-1212

                               Samuel J. Horovitz, Esq.
                               Rogers Towers, P.A.
                               1301 Riverplace Blvd., Suite 1500
                               Jacksonville, FL 32207
                               Tel: (904) 346-5774
                               Fax: (904) 396-0663

## IX.    MISCELLANEOUS

1.      **Cooperation Among the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of the Agreement and all of its terms as quickly as possible. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of the Agreement.

2.      **Entire Agreement.** The Agreement constitutes the entire agreement between the Parties with regard to the settlement of the Litigation, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

3.      **Binding Effect.** The Agreement shall be fully enforceable and binding upon the Parties and, with respect to Named Plaintiff and the other Qualified Collective Members, their spouses, children, representatives, successors, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns. The Agreement shall be admissible and subject to disclosure in any proceeding to enforce its terms.

4.      **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of the Agreement at arm's length. All terms and conditions of the

Agreement in the exact form set forth in the Agreement are material to the Agreement and have been relied upon by the Parties in entering into this Agreement.

5.    **Captions.**   The captions or headings of the sections and paragraphs of the Agreement are integral parts of this Agreement.

6.    **Construction.**   Each party participated jointly in the drafting of the Agreement, and therefore the terms and conditions of the Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

7.    **Severability.**   Following the Effective Date, if any provision of the Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of the Agreement will remain in full force and effect.

8.    **Governing Law.**   The Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of Florida, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

9.    **Court's Determination Regarding Continuing Jurisdiction.**   The Court may, in its discretion, determine that it shall retain jurisdiction over interpretation and implementation of the Agreement as well as any other matters arising out of, or related to, interpretation or implementation of this Agreement.

10.    **Waivers, Modifications, or Amendments to be in Writing.**   No waiver, modification, or amendment of the terms of the Agreement, whether purportedly made before or after the Court's approval of the settlement contemplated by the Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of the Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of the Agreement, and such party,

notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of the Agreement.

11. **When Agreement Becomes Effective; Counterparts.** The Agreement shall not become effective until its execution and approval by the Court in the Litigation. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument.

12. **Facsimile/Electronic Signatures.** Each party will execute this Agreement on the designated signature block below and direct counsel to transmit that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing the Agreement shall be deemed an original signature for purposes of the Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

13. **Parties' Authority to Sign.** The signatories to the Agreement hereby represent that they are fully authorized to enter into the Agreement on behalf of themselves or their respective principals.

14. **Qualified Collective Members Bound by Settlement.** Because of the number of Qualified Collective Members, it is impractical to have each Qualified Collective Member execute the Agreement. The Notice of Collective Action Settlement will inform all Collective Members of the binding nature of the Consent to Join Settlement, Release, and Claim Form, the execution of which shall have the same force and effect as if the Agreement were executed by each Qualified Collective Member.

15. **Exhibits Incorporated by Reference.** The terms of the Agreement include the terms set forth in any attached Exhibits, which are incorporated by this reference as though fully set forth herein. Any Exhibits to the Agreement are an integral part of the Agreement.

16. **Computation of Deadlines.** Unless otherwise specified, the term "days" means calendar days.

Dated:_____

Dated: 10/19/19_____

               _____

               Amanda Cottle

               _____

               Papa Murphy's Company Stores, Inc.

16.    **Computation of Deadlines.**  Unless otherwise specified, the term "days" means calendar days.

Dated: 10/15/19 _____

Amanda Cottle

Dated: 10/19/19 _____

Papa Murphy's Company Stores, Inc.

17

# EXHIBIT A

## COURT-AUTHORIZED NOTICE OF PAPA MURPHY'S STORE MANAGER OVERTIME SETTLEMENT

[NAME]
[ADDRESS]
[CITY, STATE ZIP]

---

**If you worked for Papa Murphy's Company Stores, Inc. as a Store Manager in the United States between July 12, 2016 and July 12, 2019 (the "Settlement Period"), you are entitled to a payment from this settlement.**

*This is not a solicitation from a lawyer. This notice explains your rights and options with respect to this settlement.*

- 15 Store Managers sued Papa Murphy's alleging that Papa Murphy's violated the law by failing to pay them overtime wages. The case is *Cottle v. Papa Murphy's Company Stores, Inc.*, No. 3:19-CV-00045 (M.D. Fla.).

- Papa Murphy's denies that it violated the FLSA and further denies that it owes any amount to the Plaintiff or any other collective member.

- The Store Managers and Papa Murphy's reached a settlement of these claims and the Court approved the settlement.

- You are receiving this notice because Papa Murphy's records show that you worked as a Store Manager during the Settlement Period.

- You are eligible to participate in this settlement by submitting the enclosed claim form by [insert date 60 days from notice mailing].

- If you timely submit the claim, your estimated settlement share is $_____. If you fail to timely return a Claim Form, you will not be entitled to receive a settlement payment.

## BASIC INFORMATION

**1.    WHAT IS THIS LAWSUIT ABOUT AND WHY IS THERE A SETTLEMENT?**

Store Managers are claiming that they worked more than 40 hours in certain workweeks but were not paid overtime wages. This settlement resolves these unpaid wage claims.

Both sides believe they would have prevailed in the case, but agreed to this settlement to resolve the disputed claims and avoid the risks, expense, and time of litigation. The Court did not decide who would win the lawsuit but approved the settlement as fair and reasonable.

**2.**    **YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT**

| | |
|---|---|
| **SUBMIT A CLAIM FORM** | By submitting a claim form by [insert date], you will receive a settlement payment of approximately $_____.  In exchange for this payment, you will release state, local, and federal wage and hour claims against Papa Murphy's during your time as a Store Manager and accruing before July 12, 2019. |
| **DO NOTHING** | By doing nothing, you retain your right to bring a separate lawsuit against Papa Murphy's Company Stores (within the applicable statute of limitations period) for any claims you may have under applicable laws for non-payment of wages, overtime wages, liquidated damages, and any related claims related to compensation.  You will not share in any money or benefits paid as a result of this Settlement. |

**3.**    **WHAT ARE THE TERMS OF THE SETTLEMENT?**

Papa Murphy's has agreed to pay $1,800,000.00 into a settlement fund to resolve the claims in the lawsuit.  The settlement fund covers payments to Store Managers who submit the enclosed Claim Form by [insert date], service payments to the Plaintiff and Opt-In Plaintiff Davis totaling $8,500.00, Plaintiff's attorneys' fees and costs of the litigation, and the costs of the Claims Administrator.

If you would like to review a complete copy of the Agreement and all of the terms of the release, please contact the settlement administrator at [insert number] or [e-mail].

**4.**    **HOW IS MY PAYMENT CALCULATED?**

Each Store Manager will be treated identically and receive the same dollar amount for each workweek the Store Manager worked in the Settlement Period in excess of 24 hours. The Agreement contains the exact allocation formula.

*Plaintiff's Counsel and Defendant's Counsel do not make any representations concerning the tax consequences of this settlement or participation in it, and you are advised to seek your own personal tax advice with respect to this settlement payment.*

**5.**    **HOW DO I MAKE A CLAIM?**

In order to join in the lawsuit, participate in the settlement, and receive a payment, you must timely complete, sign, and return the enclosed Consent to Join and Claim Form to the Settlement Administrator at the address listed below by mail in the enclosed pre-paid envelope, facsimile, or email no later than [60 DAYS AFTER THE DATE NOTICE WAS SENT].

The **Settlement Administrator** – to whom all Claim Forms must be sent is:

<p align="center">**Papa Murphy's Store Manager Overtime Pay Settlement**<br>**&lt;ADDRESS&gt;**</p>

<p align="center">2</p>

<PHONE>
<FAX>
<E-MAIL>

Settlement checks will be mailed to all eligible individuals who timely return Consent to Join and Claim Forms after the claim submission period ends.  Payments are estimated to be made by [insert date].  Please be patient.

**If your address changes, please send your updated address to [insert e-mail address] or call [insert number].**

6.    **IF I DO NOT WANT TO MAKE A CLAIM?**

If you do not want to make a claim, simply do nothing.  You will not receive any settlement payment and will not release any claims against Papa Murphy's.  If you elect, you may, at your own expense, pursue claims against Papa Murphy's if the time period to bring such claims has not expired.

7.    **DO I HAVE A LAWYER IN THIS CASE?**

The Court has decided that the lawyers at Shavitz Law Group, P.A. and Celler Legal are qualified to represent you and all Store Managers who participate in the settlement.  Their fee, plus litigation costs, was approved by the Court and will be deducted from the settlement.  You do not owe the lawyers any additional money for their services.  You do not need to retain your own attorney to participate.  The lawyer's contact information is:

Gregg I. Shavitz, Esq.                Richard Celler, Esq.
Shavitz Law Group, P.A.               Celler Legal
951 Yamato Road, Suite 285            10368 W. SR. 84 #103
Boca Raton, FL 33431                  Davie, FL 33324
(561) 447-8888                        (866) 344-9243
info@shavitzlaw.com                   richard@floridaovertimelawyer.com
www.shavitzlaw.com                    www.floridaovertimelawyer.com

3

# EXHIBIT B

**United States District Court, Middle District of Florida, <u>Jacksonville Division</u>**
AMANDA COTTLE, Individually and on behalf of all others similarly situated, Plaintiff, v. PAPA
MURPHY'S COMPANY STORES, INC., a foreign Corporation, Defendant
**Case No. 3:19-CV-00045-HES-MCR**

<<Class Member Name>>
<<Street Address>>
<<City, State Zip>>

## <u>CONSENT TO JOIN SETTLEMENT, RELEASE, AND CLAIM FORM</u>

DEADLINE:  To receive your settlement payment, you must complete, sign, and return this Claim Form.  Your
Claim Form must be postmarked or otherwise received by mail, facsimile, or email by [60 DAYS FROM
DATE OF MAILING].  If you mail the Claim Form, please send it to:

**Papa Murphy's Store Manager Overtime Pay Settlement**
Address
City, State Zip
Phone: (___) ___-____
Facsimile: (___) ___-____
E-mail:_____

**CHANGE OF ADDRESS:** If you change your address, please inform the Settlement Administrator of your
new address to ensure processing of your claim.  It is your responsibility to keep a current address on file with
the Settlement Administrator.

**CONSENT TO JOIN & AGREEMENT TO BE BOUND TO RELEASE:** I consent and agree to join and be
bound by any adjudication of this action by the Court.  I further agree to be bound by the collective action
settlement.  I also agree on behalf of myself and my attorneys, heirs, executors, personal representatives,
administrators, successors and assigns to release Papa Murphy's and Releasees from all wage and hour claims
that have been brought or could have been brought under the FLSA and any other applicable federal, state, or
local law, including, without limitation, claims for unpaid overtime and related claims for interest, liquidated
damages, attorneys' fees, costs, and expenses related to those wage and hour claims.  I hereby designate the
Shavitz Law Group, P.A. and Celler Legal to represent me in this action.


Signature: _____     Date:_____

Print:_____
　　　　　　　　　　First　　　　　　　　　Middle　　　　　　　Last

Former (Maiden) Names worked under, if any:_____

　　　　**Note: Your address and other identifying information will be kept confidential and will not be
　　　　filed with the Court.**

_____
Street Address

_____
City　　　　　　　　　　　　　　State　　　　　　　Zip Code
Email Address: _____     Cell phone: _____

Exhibit B

# EXHIBIT C

## <u>GENERAL RELEASE OF NAMED PLAINTIFF AMANDA COTTLE</u>

In consideration of the mutual covenants and promises set forth in this Agreement, as well as good and valuable consideration provided for herein, including payment of service awards, the Named Plaintiff, Amanda Cottle, for herself and for her attorneys, heirs, executors, personal representatives, administrators, successors and assigns, agrees to waive, release, and forever discharge Defendant Papa Murphy's Company Stores, Inc., including its parents, subsidiaries, affiliates, divisions, predecessors, successors and assigns, and each of their respective present and former officers, directors, shareholders, employees, and agents (collectively "Released Parties") of and from any and all claims, demands, actions, damages lawsuits, obligations, promises, expenses, costs and causes of action, both known and unknown, in law or in equity, of any kind whatsoever, that she has or may have against the Released Parties though the Effective Date of this Agreement (collectively the "Released Claims"). Without limiting the foregoing, the general release and the Released Claims include any claims that arise out of or relate to Amanda Cottle's employment with Defendant Papa Murphy's Company Stores, Inc. or the Released Parties, as well as all wage and hour claims that have been brought or could have been brought under the Fair Labor Standards Act and any other applicable federal, state, or local law, including, without limitation, claims for unpaid overtime and related claims for interest, liquidated damages, attorneys' fees, costs, and expenses, and/or other claims that were or could have been asserted in the Litigation.

_____
Amanda Cottle

Dated: __10/9/19_____

Exhibit C

# EXHIBIT D

## GENERAL RELEASE OF CURRENT OPT-IN PLAINTIFF JAMIE DAVIS

In consideration of the mutual covenants and promises set forth in this Agreement, as well as good and valuable consideration provided for herein, including payment of service awards, the Current Opt In Plaintiff, Jamie Davis, for herself and for her attorneys, heirs, executors, personal representatives, administrators, successors and assigns, agrees to waive, release, and forever discharge Defendant Papa Murphy's Company Stores, Inc., including its parents, subsidiaries, affiliates, divisions, predecessors, successors and assigns, and each of their respective present and former officers, directors, shareholders, employees, and agents (collectively "Released Parties") of and from any and all claims, demands, actions, damages lawsuits, obligations, promises, expenses, costs and causes of action, both known and unknown, in law or in equity, of any kind whatsoever, that she has or may have against the Released Parties though the Effective Date of this Agreement (collectively the "Released Claims"). Without limiting the foregoing, the general release and the Released Claims include any claims that arise out of or relate to Jamie Davis's employment with Defendant Papa Murphy's Company Stores, Inc. or the Released Parties, as well as all wage and hour claims that have been brought or could have been brought under the Fair Labor Standards Act and any other applicable federal, state, or local law, including, without limitation, claims for unpaid overtime and related claims for interest, liquidated damages, attorneys' fees, costs, and expenses, and/or other claims that were or could have been asserted in the Litigation.

Jamie Davis

Dated: 10/9/2019

Exhibit D

00840073.1