# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

AMANDA COTTLE, individually and on behalf
of all others similarly situated,

      Plaintiff,

v.                                  CASE NO.: 3:19-cv-45-J-J-20MCR

PAPA MURPHY'S COMPANY STORES, INC.,
A foreign profit corporation,

      Defendant.
_____/

## DECLARATION OF GREGG I. SHAVITZ IN SUPPORT OF JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AGREEMENT

I, Gregg I. Shavitz, declare, under the penalties of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

1.    I am an attorney admitted to practice law in this Court and a partner at the Shavitz Law Group, P.A. ("SLG"). SLG is an 8-attorney firm based in Boca Raton, Florida with an office in New York City that focuses on representing workers as plaintiffs in employment-related matters, including claims based upon individual and class-wide violations of state and federal wage and hour laws. Along with my co-counsel at Celler Legal, P.A., we represent the Plaintiff, 14 Opt-In Plaintiffs, and the putative collective members (together, "Plaintiffs") in this case.

2.    I make these statements based on personal knowledge and would so testify if called as a witness.

**Firm Background**

3.    SLG has significant experience prosecuting wage and hour class and collective actions such as this one.

1

4.    Since the founding of SLG in 1999, the firm has represented tens of thousands of employees in unpaid overtime and minimum wage claims in actions across the United States. The firm is highly experienced in collective and class action litigation for unpaid wages.

5.    In recent years, the firm has served or been appointed as class counsel or co-class counsel in the following cases, among others:

*Fiore v. Goodyear Tire & Rubber Co.*, No. 09 cv 843 (M.D. Fla);

*Hosier v. Mattress Firm, Inc.*, No. 10 cv 00294 (M.D. Fla.);

*Romero v. Florida Power & Light Co.*, No. 09 cv 1401 (M.D. Fla.);

*Saliford v. Regions Fin. Corp. et al.*, No. 10 cv 610310 (S.D. Fla.);

*Raley v. Kohl's Corp., et al.*, No. 09 cv2340 (M.D. Fla.);

*Simpkins v. Pulte Home Corp.*, No. 08 cv 00130 (M.D. Fla.);

*Biscoe-Grey v. Sears Holding Corp.*, No. 09 cv 81408 (S.D. Fla.);

*Mayfield v. Lennar Corp.*, No. 08 cv 426 (M.D. Fla.);

*Cerrone v. KB Home Florida, LLC et al.*, No. 07 cv 14402 (S.D. Fla.);

*Lewis v. Iowa Coll. Acq. Corp. & Kaplan Higher Educ. Corp.*, No. 08 cv 61011 (M.D. Fla.);

*Patterson v. Palm Beach Cnty. Sch. Bd.*, No. 07 cv 80240 (S.D. Fla.);

*Briggs, et. al. v. PNC Fin. Servs. Gr., Inc., et al.,* No. 15 cv 10447 (N.D. Ill.);

*Williams, et al. v. Follett Corporation, et al.,* No.  17 cv 02318 (N.D. Ill.);

*Watson v. BMO Financial Corp., et al.,* No. 15 cv 11881 (N.D. Ill.);

*McCue v. MB Financial, Inc. et al.*, No. 15 cv 988 (N.D. Ill.);

*Robbins v. Abercrombie & Fitch Co.*, No. 15 cv 6187 (W.D.N.Y.);

*Besic v. Byline Bank, Inc., et al.*, No.15 cv 8003 (N.D. Ill.);

*Snodgrass v. Bob Evans Farms, Inc.*, No. 12 cv 768 (S.D. Ohio);

*Waggoner v. U.S. Bancorp. et al.,* No. 14 cv 1626 (N.D. Ohio);

*Kampfer v. Fifth Third Bank*, No. 14 cv 2849 (N.D. Ohio);

*Waggoner v. U.S. Bancorp. et al.,* No. 14 cv 1626 (N.D. Ohio);

*Bucceri v. Cumberland Farms, Inc.*, No. 15 cv 113955 (D. Mass.);

*Danley v. Office Depot, Inc., et al.*, No. 14 cv 81469 (S.D. Fla.);

*Essex v. The Children's Place, Inc.*, No. 15 cv 05621 (D.N.J.);

*Krokos, et al v. The Fresh Market, Inc.,* No. 16 cv 12082 (D.Mass.);

*Long v. HSBC USA Inc.*, No. 14 cv 6233 (S.D.N.Y.);

*Prena v. BMO Financial Corp.*, et al., No.14 cv 09175 (N.D. Ill.);

*Puglisi v. TD Bank N.A.,* No. 13 cv 6037 (E.D.N.Y.);

*Roberts v. TJX Cos., Inc., et al.*, No. 13 cv 13142 (D. Mass.);

*Stallard v. Fifth Third Bank, et al,.* No. 12 cv 01092 (W.D.Pa.);

*Amador v. Morgan Stanley & Co, LLC.* No. 11 cv 4326 (S.D.N.Y.);

*Wright v. Flagstar Bank FSB et al.,* No. 13 cv 15069 (E.D. Mich.);

*Zeltser v. Merrill Lynch & Co., Inc., et al.,* No. 13 cv 1531 (S.D.N.Y.);

*Clem v. Keybank, N.A.*, No. 13 cv 789 (S.D.N.Y.);

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 cv 3693 (S.D.N.Y.);

*Beckman v. KeyBank, N.A.*, No. 12 cv. 7836 (S.D.N.Y.);

*Hernandez v. Merrill Lynch & Co., Inc., et al.*, No. 11 cv 8472 (S.D.N.Y.);

*Palacio v. E*TRADE Fin. Corp., et al.*, No. 10 cv 4030 (S.D.N.Y.);

*Stewart v. Prince Telecom, et al.*, No. 10 cv 4881 (S.D.N.Y.);

*Nash v. CVS Caremark Corp.*, No. 09 cv 79 (D.R.I.)

6.      I am an experienced trial attorney with a practice that concentrates on representing plaintiffs in unpaid wage litigation involving the Fair Labor Standards Act and state laws.  I have represented tens of thousands of such plaintiffs over that period of time. Additionally, I have lectured in the past at seminars sponsored by the Labor and Employment Section of the Florida Bar, and have spoken at the Labor and Employment Section Certification Review Seminar on two separate occasions as well as the Academy of Florida Trial Lawyers Workhorse Seminars.  I have also been awarded Florida Trend Magazine's Legal Elite for various years including 2014 in the area of Labor & Employment law; South Florida Legal Guide – Top Lawyer – Wage and Hour law – 2009-2019; Top Lawyer Up and Comer – Wage and Hour law – 2004, 2006, and 2009; and South Florida Legal Guide – Top Lawyers List – 2009-2019; among other awards and honors.  I have also earned the distinction of Top Lawyer in Palm Beach Illustrated (2018) and am a lifelong fellow of the Florida Bar Foundation.

7.      I have held the highest AV Peer Review Rating from LexisNexis Martindale-Hubbell for preeminent attorneys from 2000 to the present.

8.      I am a graduate of the University of Miami School of Law with an undergraduate degree from Tufts University.

9.      I have been admitted to the Florida Bar since 1994 and am also admitted to U.S. District Courts for the Southern, Middle and Northern Districts of Florida, the U.S. Eleventh Circuit Court of Appeals and U.S. Third Circuit Court of Appeals.

10.      Attorney Michael J. Palitz is a Partner in SLG's New York City office since 2015. After receiving his Juris Doctor degree, *cum laude,* from Pace Law School in 2010 where he also served as the Editor-in-Chief of the Pace International Law Review, he was admitted to the New Jersey and New York Bars in June 2010 and September 2010, respectively.  Mr. Palitz also is

admitted to the U.S. District Courts for the District of New Jersey, the Eastern District of New York, the Southern District of New York, the Northern District of New York, the District of Colorado, and the Western District of New York. Mr. Palitz is a member of the Nassau County Bar Association.  He presented at a CLE panel for the Suffolk County Bar Association on FLSA issues.  Since graduating from law school, Mr. Palitz has focused his practice exclusively on workers' rights and litigating complex wage and hour class and collective actions throughout the country, including trying a Fair Labor Standards Act collective action arbitration to a verdict for employees.

11.     Attorney Logan A. Pardell has been an Attorney with SLG in 2017. Since joining SLG, Mr. Pardell has represented employees in in federal and state courts throughout the United States, primarily litigating complex wage and hour class and collective cases. After receiving his Juris Doctor and Masters in Business Administration degrees, *cum laude*, from the University of Florida in 2015, Mr. Pardell was admitted to the Florida Bar in September 2015. Mr. Pardell is also admitted to the U.S. District Courts for the Southern District of Florida and the Middle District of Florida.

12.     Attorney Richard Celler graduated from the University of Miami in 1996 with a Bachelor of Arts Degree, and attended University of Miami Law School where he received his Juris Doctor, cum laude, in 1999.  Mr. Celler was admitted to the Florida Bar in 1999, and since that time, has practiced both on the plaintiff and defense side in employment law, exclusively. Since 1999, Mr. Celler has practiced in the area of wage hour and employment law with significant experience in providing advice and litigating lawsuits arising under federal and state employment and discrimination laws. To that end, Mr. Celler worked on the defense side as a senior associate at Morgan Lewis and Bockius, LLP, and Steel Hector and Davis representing

5

Fortune 100 companies in complex FLSA and employment matters until approximately 2003. After leaving the defense side of employment law, Mr. Celler created his own plaintiff's law firm, sold same in 2004, and then created one of the largest plaintiff employment law divisions in the United States at the law firm of Morgan & Morgan, P.A.  At Morgan & Morgan, Mr. Celler supervised eleven (11) lawyers and over 1,000 class action/single plaintiff files at any given time, with a support staff of over fifty (50) employees, across five (5) different offices in Florida, Georgia, Mississippi, and Tennessee. Mr. Celler left Morgan & Morgan in late 2013, and reopened his own firm, Richard Celler Legal, P.A in 2014. From 2004 through today, Mr. Celler has served as lead counsel on numerous class and collective actions around the United States, and has resolved in excess of $100,000,000 in claims for FLSA and employment law plaintiffs. Mr. Celler has tried numerous cases involving employment, discrimination and labor relations issues, and does so on an annual basis.  Mr. Celler has also been a frequent speaker and regularly conducts supervisory training for companies in the area of compliance with employment and discrimination laws. Mr. Celler is regularly called to co-counsel on pending cases around the country involving complex FLSA matters.

13.     Mr. Celler is a member in good standing of the U.S. Court of Appeals for the Eleventh Circuit and the Supreme Court of Florida.  In addition, Mr. Celler is admitted to all bars at all levels of the U.S. District Courts for the Northern, Middle and Southern Districts of Florida.  Mr. Celler is rated "AV" by Martindale Hubble and has received numerous awards and accommodations for his practice throughout his career, and is cited by media sources as an "expert" in employment law.

**Overview of Investigation, Litigation and Settlement Negotiations**

14.     Plaintiff Amanda Cottle is a former exempt-classified Store Manager ("SM") who alleges Papa Murphy's Company Stores, Inc. ("Papa Murphy's" or "Defendant") violated the Fair Labor Standards Act by improperly classifying her and other SMs as exempt from federal overtime requirements and failing to pay them overtime wages.

15.     In 2018, Plaintiffs' Counsel began investigating allegations that SMs had been misclassified as exempt and therefore were working uncompensated overtime hours.  Plaintiffs' Counsel conducted in-depth interviews with Plaintiffs and other witnesses and reviewed Defendant's compensation, timekeeping, and overtime pay practices and the manner in which Papa Murphy's store locations operate.  Plaintiff's Counsel also conducted significant legal research into the issues of whether SMs were owed overtime wages and whether Defendant could satisfy its burden to show that any exemption to overtime pay laws could bar Plaintiffs' claims.

16.     On January 8, 2019, Plaintiff Amanda Cottle filed a Collective Action Complaint on behalf of Plaintiffs.  On January 31, 2019, Defendant filed its Answer and Affirmative Defenses in which it denied liability for all damages asserted in this case.  Specifically, Defendant maintained that it had properly classified Plaintiffs and putative collective members as exempt in accordance with all applicable federal and state wage and hour laws.  D.E. 12.

17.     Following Defendant's filing of its Answer, the Parties began discussing the possibility of settlement.  As such, the Parties jointly agreed to engage in an early mediation of this case and scheduled a mediation with mediator Eric English, Esq. on April 1, 2019 in Portland, Oregon and accordingly requested that the Court stay the case.  D.E. 21.  On March 14,

2019, the Court granted the Parties' Joint Motion to Refer the Case to Mediation and Stay Case Management Deadlines.  D.E. 23.

18.     Thereafter, the Parties commenced a privileged and confidential information exchange to provide Plaintiffs' Counsel the opportunity to examine SMs' job duties and payroll data with respect to the Named Plaintiff and other SMs employed during the relevant time period.

19.     Prior to the in-person mediation, Plaintiffs prepared and shared a comprehensive mediation statement and damages model to facilitate settlement discussions. Plaintiffs also researched legal issues including the method to calculate damages, issues relating to discretion and independent judgment which would bear on Defendant's affirmative defenses, and the willfulness and good faith issues.   Additionally, prior to the mediation, the Parties discussed their analyses of the Plaintiffs' alleged unpaid overtime claims, the data and information exchanged by the Parties, and the relevant law, including, but not limited to: (i) whether Defendant could establish that Plaintiffs' primary duties are management; (ii) whether Plaintiffs' claims could be certified as a collective action under Section 216(b) of the FLSA; (iii) whether Plaintiffs could potentially establish a willful violation of the FLSA to extend the applicable statute of limitations beyond two years; and (iv) whether Defendant could establish that it had acted in objective and subjective good faith such that liquidated damages should not be awarded.

20.     While the Parties were unable to reach an agreement during the full-day mediation, they agreed to continue to keep settlement discussion open following mediation.  On April 18, 2019, the Parties advised the Court of the same. D.E. 27.

21.     Plaintiffs' Counsel had frequent communication with mediator Eric English, Esq. over the following five months in an effort to resolve the case without further litigation.

22.     While the discussion of settlement continued, Plaintiffs continued a vigorous investigation into the claims of Plaintiffs and putative collective members to both support their position on settlement as well as to support their impending Motion for Conditional Certification.

23.     Because the Parties were unable to timely resolve this matter, on June 5, 2019, this Court entered an Order requiring the Parties to meet and confer and submit a Case Management Report on or before June 19, 2019.  D.E. 30.  Accordingly, the Parties thereafter underwent a lengthy conferral process, which included telephone conferences and exchanges of counterproposals before submitting the Case Management Report on June 19, 2019.  D.E. 31.  Due to the outstanding disputes in the Case Management Report, this Court entered a Notice of Pretrial Conference for July 17, 2019.  D.E. 32.

24.     Following the submission of the Parties' Case Management Report and because settlement was not yet achieved, to protect the interests of the putative collective, Plaintiffs worked diligently to prepare a Motion for Conditional Certification.  Prior to filing their Motion for Conditional Certification, in order to comply with L.R. 3.01(g)'s conferral requirement, the Parties engaged in a lengthy conferral process regarding the scope of the proposed notice.  This conferral process included significant attorney hours for telephone conferrals, email proposals, and red-line edits.  Despite the significant time invested by the Parties in an attempt to stipulate to the form and scope of notice, the Parties were unable to agree and Plaintiffs eventually filed their Motion for Conditional Certification on July 11, 2019.  D.E. 36.  Plaintiffs' Motion for Conditional Certification sought to send notice of this lawsuit to all CSRs employed by Defendant from three years prior to the filing of the Complaint to the present.  This Motion for Conditional Certification was supported by 12 exhibits, including seven Opt-in Plaintiff declarations.  *Id.*

25.     Following the submission of Plaintiffs' Motion for Conditional Certification, Plaintiffs' Counsel prepared for and travelled to Jacksonville, Florida to attend the Court-ordered Case Management Conference on July 18, 2019.  At the conference, the Court addressed issues relating to the conditional certification motion and the claims and defenses in the case.

26.      After the Court entered a Case Management and Scheduling Order [D.E. 38], the Parties still continued to engage in settlement discussions with the assistance of mediator Eric English, Esq.   Plaintiffs' Counsel continued to have numerous phone calls and email correspondence with Mr. English about the claims and defenses in an effort to resolve the case.

27.     On July 25, 2019, Defendant filed its Response in Opposition to Plaintiffs' Motion for Conditional Certification.  D.E. 39.  In its Response, Defendant argued that Plaintiffs failed to meet their burden that they and putative collective members were similarly situated.  *Id.* After an in-depth review and analysis of Defendant's Response, Plaintiffs moved for leave to file a reply brief.  D.E. 40.

28.     While Plaintiffs were preparing their reply brief to support the Motion for Conditional Certification, the Parties were able to reach an agreement on a settlement in principal on July 31, 2019. D.E. 42.

29.     Thereafter, the parties negotiated the terms of the written settlement agreement which was signed by the parties on October 15, 2019.

30.     To reach the general terms of this settlement, the parties had hard fought negotiations which lasted five months. Thereafter, the Parties required more than an additional two months to negotiate the specific terms of the settlement agreement and come to agreements on the corresponding approval papers.

31.     Both parties fiercely believed that the facts and law supported their position. Plaintiffs' Counsel supports this settlement and believes it represents a fair resolution of these disputed FLSA claims.

**Settlement Claims Administrator**

32.     The Parties have retained Rust Consulting, Inc. a wage and hour settlement administrator, to serve as the Settlement Administrator.

33.     Rust Consulting, Inc.'s fees will be paid from the settlement fund.

**Settlement**

34.     The settlement amount of $1,800,000.00 is substantial, especially in light of the considerable risks that Plaintiffs face.

35.     Based upon Plaintiffs' damages analysis and the information shared among the parties, Store Managers worked approximately 13 overtime hours in overtime workweeks (which Plaintiffs estimate are about 80% of the total workweeks as the other weeks had time off for sick, personal, and vacation time).  The total actual damages for the entire three-year FLSA period is about $1,835,623.

36.     The settlement is well within the range of reasonable recoveries for the Collective members and represents significant value given the attendant risks of litigation.  The Settlement Agreement also does not present any signs of collusion.  It was vigorously negotiated with the help of a well-respected collective action employment law mediator.

37.     All Collective Members' awards will be calculated according to the same allocation formula.

**Service Awards**

38.     Plaintiffs request approval of service awards of $8,500.00.  The Service Award
Plaintiffs request is reasonable given the significant contributions that Plaintiff Amanda Cottle
and Opt-in Plaintiff Jamie Davis made to advance the prosecution and resolution of the lawsuit.

39.     Plaintiffs Cottle and Davis took substantial actions to protect the interests of the
putative collective members and those actions resulted in a substantial benefit.  Plaintiffs Cottle
and Davis participated in an extensive pre-suit investigation crucial to establishing Plaintiffs'
claims and assisted in preparation for mediation.

40.     Additionally, Plaintiff Cottle agreed to bring the action in her name, to be
deposed, and to testify at trial, if necessary.   Thus, she assumed significant risk that should the
suit fail, she could find herself liable for the Defendant's costs or even, if the suit was held to
have been frivolous, for Defendant's attorneys' fees.   Although no longer employed by
Defendant when they joined the lawsuit, they merit recognition for risking retaliation from future
employers.

41.     In exchange for the service award payment, Plaintiffs Cottle and Davis will
provide Defendant with a general release of claims.

**Attorneys' Fees and Costs**

42.     Plaintiff's Counsel are nationally recognized for their expertise in litigating
complex class and collective actions and are justified in seeking compensation in the form of
30% of the common fund as fees and an additional $18,958.43 in costs for their efforts.

43.     In my experience over the last 25 years handling complex FLSA cases, I believe
that this settlement provides a fair and just resolution of these claims.  Plaintiffs faced risk in this
litigation as to whether they were misclassified as exempt Store Managers and therefore owed

compensation for their hours worked over 40 in a workweek.  This settlement eliminates the uncertainty that both sides faced if this case proceeded through trial and also conserves resources of the parties and the Court.  If a settlement was not achieved, the Parties were preparing for phase two discovery (assuming conditional certification was granted), hundreds of discovery responses, dozens of depositions, and a substantial and costly production of ESI.  It was likely that a complex trial or multiple trials was likely and appeals would follow.  This settlement represents a fair compromise and a just resolution of these claims and provides certain and timely payment to Plaintiffs.

44.    Before agreeing to take on this matter, Plaintiff's Counsel agreed with the Plaintiffs to request no more than one-third of any (at that time uncertain) future recovery, plus costs.  Plaintiffs' Counsel represented the Plaintiffs on a contingency basis and were not paid for any of their time or reimbursed for any costs expended to date.

45.    In our experience, law firms that represent plaintiffs in employment matters like this matter typically charge their clients legal fees of at least one-third of their gross recoveries when they represent them on a contingency fee basis.

46.    Counsel's skill and experience was directly responsible for bringing about the positive settlement in the instant case and weigh in favor of granting the requested fees.

47.    Due to the experience of its attorneys in representing workers in litigation of this type, SLG is adept at minimizing duplication of efforts and maximizing billing judgment. SLG makes every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who is able to effectively perform each task

48.    When SLG lawyers spend time on selected contingency matters, they do so at significant risk and opportunity cost for the firm. SLG frequently turns away additional cases,

including hourly litigation matters and other contingency matters, in order to enable its attorneys to work on pending contingency matters, primarily (though not exclusively) class or collective actions.

49.     As of October 14, 2019, SLG's lodestar total was $208,365.00, which includes firm attorneys and paralegals having spent more than 460 hours investigating, researching, litigating, mediating, and settling this case.  During this same period, Richard Celler Legal, P.A.'s lodestar total was $96,300.00, which includes more than 214 hours investigating, researching, litigating, mediating, and settling this case.  Thus, in total, Plaintiff's Counsel has incurred $304,665.00 in lodestar and have spent 674 hours on this case.

50.     The hours reported are reasonable for a case of this complexity and size and were compiled from contemporaneous time records maintained by each attorney and paralegal participating in the case.

51.     The requested attorneys' fees are not based solely on time and effort already expended; they are also meant to compensate Plaintiff's Counsel for time that they will be required to spend administering the settlement in the future. In our experience, administering class settlements of this nature and size requires a substantial and ongoing commitment. Plaintiff's Counsel expects to respond to more inquiries after final approval.

**<u>Costs Incurred</u>**

52.     In addition to its fees, as of October 14, 2019, SLG has incurred $16,406.48 in out-of-pocket costs prosecuting this litigation, which were incidental and necessary to the representation of the class and which include investigation of Plaintiffs' claims, court costs, mediation fees, and travel costs including mediating in Portland, Oregon at Defendant's request. During this same time, Richard Celler Legal, P.A. has incurred $2,551,95 in out-of-pocket costs,

which were incidental and necessary to the representation of the class and which include travel costs incurred for attending mediation in Portland, Oregon at Defendant's request. Thus, in total, Plaintiff's Counsel has incurred $18,958.43 in out-of-pocket costs in prosecuting this case.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: October 15, 2019
      Boca Raton, Florida

_____
Gregg I. Shavitz